DOC NO
REC'D/FILED
2015 OCT 21 AM 8:03
PETER OPPENEER
CLERK US DIST COURT
WD OF WI

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

v.

BRAD R. VOLKMANN,

                Defendant.

INFORMATION

Case No. 15 CR 129 WMC

18 U.S.C. § 1343

---

THE UNITED STATES ATTORNEY CHARGES:

### COUNT 1

1.     At times material to this information:

    (a)     During the period from 2001 to 2010, defendant BRAD R. VOLKMANN was employed in sales at a consumer products company known as Applica Consumer Products, Inc. ("Applica").

    (b)     On or about May 24, 2001, Applica and two other entities entered into a three-party agreement. The agreement was among:

        (i) Applica;

        (ii) a sales and marketing agent (the "agent"); and

        (iii) a distributor.

Pursuant to the agreement, the agent acted as an agent for the sale -- through the distributor -- of Applica products to retailers, and Applica paid the agent a monthly commission equal to 4.5% of net sales.

(c) In 2010, Spectrum Brands, Inc., a global and diversified consumer products company based in Madison, Wisconsin, purchased Applica, at which time VOLKMANN became an employee of Spectrum Brands. VOLKMANN remained employed as a sales representative at Spectrum Brands until March 5, 2014.

(d) After Spectrum Brands purchased Applica, Spectrum Brands continued Applica's business relationship with the agent and the distributor. (For ease of reference, Applica and Spectrum Brands are referred to in the following paragraphs as the "victim.")

(e) From time to time, the victim gave the distributor credits for "co-op" expenses. Co-op expenses are promotion expenses, advertising costs, and discounts designed to encourage and support the sale of the victim's products. The victim gave these co-op credits by allowing the distributor to deduct co-op expenses from the amount the distributor otherwise owed to the victim. The distributor periodically forwarded to the agent monies it had received from the victim via these credits. The agent created a separate ledger account known as the "Applica Promo Fund" and deposited in the fund the co-op payments that the agent received from the distributor. The fund was designed to be used to pay for legitimate co-op expenses that promoted efforts to sell the victim's products.

2. During the period from on or about January 28, 2005, to on or about January 23, 2014, VOLKMANN devised a scheme to defraud the victim, and to

obtain at least $250,000 from the victim, by means of false and fraudulent pretenses and representations.

3. It was part of the scheme that beginning on or about January 28, 2005, VOLKMANN regularly embezzled funds from the Applica Promo Fund. VOLKMANN directed the agent to withdraw funds from the Applica Promo Fund by drawing checks payable to third-parties and then directed the agent to mail the checks to VOLKMANN's residence. By making the checks payable to third parties, VOLKMANN made it falsely appear as if the checks were for legitimate co-op expenses. After receiving checks, VOLKMANN used them to pay vendors and service providers for items and services obtained for his own personal benefit, including payments for lawn services, limousine services, vacations, airline tickets, groceries, gas, and clothing.

4. It was further part of the scheme that beginning in approximately 2010, VOLKMANN increased the amount of funds going into the Applica Promo Fund by causing the victim to over-pay the agent. Specifically, beginning in 2010, on approximately a monthly basis:

(a) When VOLKMANN received an invoice from the agent requesting payment of the month's 4.5% commission, VOLKMANN fabricated a false invoice, inflating the amount of the agent's original invoice, usually in a round figure in the range of $1,500 to $4,000 per month. He also fabricated a corresponding

false sales report, inflating the sales figures by adding non-existent sales to the sales report that VOLKMANN had received from the distributor.

      (b)    VOLKMANN then emailed to the victim the inflated invoice, along with the corresponding falsified sales report, and VOLKMANN informed the victim that the invoice had been approved by VOLKMANN for payment.

5. The victim, relying on VOLKMANN's approval of the invoices and unaware that VOLKMANN had fraudulently inflated the invoices, paid the inflated invoiced amounts to the agent.

6. It was further part of the scheme that VOLKMANN instructed the agent that when the victim made a payment to the agent in excess of the amount of the agent's original invoice, the agent should deposit the excess into the Applica Promo Fund. The agent followed those instructions and, as a result, the embezzled funds went into the Applica Promo Fund. It was further part of the scheme that VOLKMANN then instructed the agent to disburse the funds via additional checks payable to third-parties and delivered to VOLKMANN's residence. The agent did so, and when VOLKMANN received the checks, he also converted that money to his own personal use.

7. On or about January 6, 2014, in the Western District of Wisconsin, the defendant,

                            BRAD R. VOLKMANN,

for the purpose of executing this scheme, knowingly caused writings, signals and pictures to be transmitted by means of wire communication in interstate commerce. Specifically, after receiving an invoice from the agent for $3,078.47, VOLKMANN emailed to Spectrum Brand's accounting department an inflated invoice that falsely purported to be an invoice from the agent for $6,078.47.

(In violation of Title 18, United States Code, Section 1343).

_____10/20/2015_____
Date

_____/s/ John W. Vaudreuil_____
JOHN W. VAUDREUIL
United States Attorney