UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

BRAD R. VOLKMANN,

        Defendant.

Case No.: 15-CR-129

---

### DEFENDANT'S SENTENCING MEMORANDUM

---

The Defendant, Brad R. Volkmann, and his attorney, Jonathan A. LaVoy, Kim & LaVoy, S.C., submit the following sentencing memorandum in support of a recommendation for a sentence below the advisory guideline range pursuant to the sentencing factors in 18 U.S.C. § 3553(a). The Defendant is requesting that the Court consider a probationary disposition with appropriate conditions including a period of home confinement.

### INTRODUCTION

On October 20, 2015, an Indictment was filed charging the Defendant with one count of Wire Fraud in violation of Title 18, United States Code, Section 1343. On November 9, 2015, the Defendant appeared before United States District Judge William M. Conley. The Defendant waived Indictment and entered a plea of guilty pursuant to the written plea agreement.

Pursuant to the plea agreement, the Defendant agreed to pay $250,000.00 toward restitution no later than two weeks prior to sentencing. The Defendant has fulfilled this obligation and has repaid $250,000.00 in advance pursuant to his agreement. (See Attached A).

In addition, the Defendant and the victim, Spectrum Brands, have reached a Settlement Agreement and Mutual Release related to the previously disputed $125,000.00 in restitution involving gifts to customers which may have resulted in a benefit to Spectrum Brands. (See Attached B). Pursuant to this agreement, Mr. Volkmann has stipulated to, and has agreed to pay, the $125,000.00 in requested restitution as part of the criminal case. In exchange, Spectrum Brands has released Mr. Volkmann from all civil claims. Mr. Volkmann has been compliant with all of the terms and conditions of release.

## ARGUMENT

The Court is required to consider all of the factors listed under 18 U.S.C. § 3553(a) when imposing a sentence that is "sufficient, but not greater than necessary, to comply with the purposes of paragraph (2) of this subsection." 18 U.S.C. § 3553(a).

### A.     Nature of Offense

Mr. Volkmann recognizes the serious nature of this offense. He was employed as a sales representative for Applica/Spectrum Brands in Middleton, Wisconsin. Mr. Volkmann directed funds in the amount of $250,000.00 from the Applica Promo Fund to be paid towards the Defendant's personal expenses. In addition, the Defendant improperly spent funds from the Applica Promo Fund on gifts for his employer's customers without knowledge. While these gifts likely benefited Spectrum Brands in that they garnered good for the company, they were nonetheless provided without proper approval. Mr. Volkmann acknowledges that he inflated invoices by means of wire communications to obtain the funding to support these improper purchases.

Mr. Volkmann acknowledges his guilt and has been cooperative with the Government during its investigation. The Defendant was contacted by the Federal Bureau of Investigation (F.B.I.) on or about February 2, 2015. He immediately retained the law firm of Kim & LaVoy, S.C. Attorney Jonathan A. LaVoy contacted agents of the F.B.I. and learned that Assistant United States Attorney Stephen P. Sinnott was assigned to the case.

Mr. Volkmann has been very open, honest, and contrite during this investigation and every effort was made to cooperate with the Government. As the Government advised the Court, Mr. Volkmann promptly proffered, fully cooperated in the investigation, and assisted agents in determining the scope of the embezzlement. Under the Proffer Agreement, Mr. Volkmann and Attorney LaVoy met with and debriefed with Assistant United States Attorney Sinnott and F.B.I. agents at the offices of the United States Attorney's Office on May 27, 2015. Mr. Volkmann acknowledged wrongdoing and provided truthful, accurate, and reliable information regarding his actions and behavior. He answered a series of questions from AUSA Sinnott and the agents which aided the Government in its investigation and avoided the need for substantial additional collateral investigation in this complex case. At this meeting, Mr. Volkmann was provided and agreed to review an Applica Promo Fund Ledger from AUSA Sinnott.

On June 23, 2015, with the assistance of counsel, Mr. Volkmann provided a letter to AUSA Sinnott outlining all of his non-legitimate purchases. He further provided information about the culture of his business and the roles of other individuals related to expectations of gifts as part of the business relationship. Specifically, Mr. Volkmann informed the Government that approximately $125,00.00 of the inappropriately used funds were used as gifts to customers without the pre-approval of Spectrum Brands. He identified a "gift giving" and "wining and

dining" culture that is prevalent in the industry. Some customers that Mr. Volkmann serviced had certain expectations that he would provide gifts as part of the relationship. While he did not seek company approval for these gifts, he rationalized his actions because he felt that the gifts were expected and were part of the seller/buyer relationship. Mr. Volkmann provided documentation to the Government that the significant sales that Spectrum Brands received from Kohl's Department Stores were, at least in part, due to the relationship that Mr. Volkmann had fostered with their buyer. In 2013, for example, Mr. Volkmann's account grew from $28,523,566.00 to $40,124,150 in gross sales. This was a 41% growth which translates to nearly 11.6 million dollars for Spectrum Brands. Mr. Volkmann had the highest percentage of growth in the company that year and he believes that this growth was due to the relationship with the Kohl's buyer.

    Mr. Volkmann further agreed to conduct an additional telephone conversation with the Government on July 16, 2015, to answer more questions and to clarify additional items. Again, Mr. Volkmann provided truthful, accurate, and helpful information in which the Government relied. On October 26, 2015, Mr. Volkmann signed the Plea Agreement in this case. On November 20, 2015, Mr. Volkmann voluntarily completed a financial disclosure statement which outlined all of his assets and liabilities to ensure he was not hiding assets. This financial disclosure was shared with Spectrum Brands through its attorney, Eric Wilson. Mr. Volkmann agreed to liquidate his life's savings, which was his 401(k) retirement account worth approximately $426,431.64. This account contained monies Mr. Volkmann had saved for retirement through his entire adult life. Mr. Volkmann filed an early withdrawal request to liquidate his retirement account and incurred a substantial tax liability as a consequence. Lastly, as indicated, Mr. Volkmann reached a civil settlement with Spectrum Brands on December 2,

2015, in which he agreed to pay $125,000.00. As part of this agreement, he agreed to withdraw his objection to the $125,000.00 remaining restitution request and agreed to withdraw his argument that restitution should be reduced or offset because these gifts had a positive impact on Spectrum Brands. Mr. Volkmann agreed to this civil settlement because he acknowledges that he did not have authority to provide these gifts and he knew what he did was wrong. Furthermore, he wanted to provide his wife and family with finality regarding this issue and did not wish to engage in time consuming and costly litigation in a civil lawsuit for either party.

With regard to the $250,000.00 that Mr. Volkmann used for personal expenditures, he has expressed sincere remorse and appropriate empathy for the troubles he has caused. While there is never a good explanation for embezzlement or theft, to the best of his ability, Mr. Volkmann wants the Court to know how and why he did what he did. As Mr. Volkmann indicated in the letter to the Court in the PSR, he made fraudulent purchases for personal gain which included hotel stays, airline tickets, groceries, gas and clothing. He has nothing to show for his actions. He has lost his job, damaged his reputation, and surrendered all of his retirement savings. He acknowledges that he was swept away by greed and deceit. During these years, he worked from home with very little oversight or structure. At times, he thought of himself as his own boss and justified his improper spending as part of the perks of the job. He further rationalized his behavior because customers were routinely provided with perks and gifts in the industry, that it wouldn't hurt if he provided some of the same benefits to himself. While his behavior added up to a significant sum of money ($250,000.00), it took place relatively slowly over the course of several years. He would use these purchases to supplement his lifestyle and, now looking back, he knows it was foolish, irresponsible, harmful and in no way worth it. Most importantly, Mr. Volkmann has come to terms with how his behavior has

affected others, including Spectrum Brands and as his own family. He recognizes that he betrayed the trust of his employer and took advantage of the system that was in place. He understands that he had a good career and he wishes daily he could go back in time and do it differently. He has liquidated all of his savings and has now paid $250,000.00 back in full. He had committed to repay an additional amount of $125,000.00 and will work hard to ensure that Spectrum is made whole as quickly as possible.

Mr. Volkmann knows that he is now a convicted felon and he has lost significant trust within the community. His wife describes that he continually punishes himself for his actions and is unable to forgive himself. The fear of going to prison is overwhelming to him. His depression and self-punishment went so far that he attempted suicide shortly after the plea hearing in this case. He has now come to grips with this choices and wishes to regain his place as a trusted and contributing member of society.

### B.     Personal Characteristics

Brad R. Volkmann is 56 years old and has no prior criminal or arrest history. Mr. Volkmann has a high school diploma as well as an associate's degree in Marketing from Waukesha County Technical College. He has an extensive work history as outlined in the Presentence Report. Over his 27 year career, Mr. Volkmann achieved several promotions including becoming the Senior National Account Manager to Director of Sales at Spectrum Brands. He has been a provider for his family and a successful and accomplished salesman for his entire adult life. He was terminated from his most recent employment at Focus Products Group on November 12, 2015, shortly after the plea hearing due to this conviction. He is actively seeking employment, and with his extensive work experience, he is likely employable

despite this pending legal matter. If provided with the opportunity for probation, Mr. Volkmann will be able to secure employment and pay the remaining restitution. He fears that if he is incarcerated, the prospects of obtaining a viable, well-paying job upon his release, would be limited.

Mr. Volkmann has been happily married to his wife for 36 years. They have successfully raised three children who have all achieved college degrees and maintain solid employment. Mr. Volkmann has otherwise lived a pro-social and law abiding lifestyle which included considerable volunteer work and involvement in his children's lives. His family is very supportive and will continue to provide a positive influence on his life going forward. Based on the family's current financial circumstances, Mr. Volkmann's wife believes that it will not be possible for her to remain in the family home in the event he is incarcerated. Again, if provided with the opportunity for probation, Mr. Volkmann will be in a position to repay the remaining restitution while maintaining a stable home for his wife.

### C. Provide the Defendant with Medical Care or Corrective Treatment.

Section 3553(a)(2)(D) requires the Court to consider the need for the sentence imposed to provide the Defendant with needed medical care, or other correctional treatment, in the most effective manner. As indicated in the PSR, Mr. Volkmann attempted suicide shortly after the plea hearing in this case. He is in need of continuing treatment for depression and anxiety which would best be addressed in a non-custodial setting. Mr. Volkmann is currently taking Bupropion for his depression and anxiety. He has engaged in inpatient hospitalization at Waukesha Memorial Hospital. He is currently engaging in outpatient counseling at Behavioral Medicine in Oconomowoc. Furthermore, in 2003, Mr. Volkmann suffered a minor stroke (TIA)

and his heath is being monitored by his primary care physician. Mr. Volkmann is currently on an aspirin regimen to help prevent future blood clotting. Probation would allow Mr. Volkmann to continue his current course of mental health treatment and medical treatment without expense to the government.

### D. The Need for Deterrence and Protection of the public.

In fashioning a sentence, Sections 3553(a)(2)(B) and (C) require the Court to consider deterrence and protecting the public from further criminal activity. Probation with home confinement is sufficient to address both deterrence and protection of the public. Mr. Volkmann is now a convicted felon who has liquidated his assets to pay sizeable up-front restitution. He has been the subject of several negative newspaper articles and has lost his employment because of his actions. Because of this, not only will Mr. Volkmann will be personally deterred from future criminal behavior, but the public at large will be deterred from similar conduct. Based on Mr. Volkmann's lack of criminal history, his education, his close family support, and the ability of the Federal Probation Department to monitor his behavior and work responsibilities, there is no significant risk that the public would be harmed with a probationary disposition. The supervision plan and special conditions outlined in the Appendix to the PSR will ensure appropriate restrictions and rules which maintain accountability for Mr. Volkmann, and will serve to protect the community from further harm. This plan will also allow him to obtain and maintain employment and make payments on the remaining restitution to the victim as a condition of his supervision.

## CONCLUSION

Given all of the above factors, the Defendant respectfully requests the Court to impose a probationary disposition with appropriate conditions including a period of home confinement.

Dated at Brookfield, Wisconsin this 20th day of January 2016.

By:

s/JONATHAN A. LAVOY
Jonathan A. LaVoy Bar Number: 1027608
Attorney for Defendant
Kim & LaVoy, S.C.
2505 N. 124th Street, Suite 220
Brookfield, WI 53005
Telephone: (262) 796-1400
Fax: (262) 796-1470
email: jlavoy@kimandlavoy.com

```
DUPLICATE

Court Name: District Court WIW
Division: 3
Receipt Number: 34690024983
Cashier ID: nnelson
Transaction Date: 01/12/2016
Payer Name: BRAD VOLKMANN
-----------------------------------
CRIMINAL DEBT
 For: BRAD VOLKMANN
 Case/Party: D-WIW-3-15-CR-000129-001
 Amount:         $250,000.00
-----------------------------------
Paper Check Conversion
 Amt Tendered:  $250,000.00
-----------------------------------
Total Due:      $250,000.00
Total Tendered: $250,000.00
Change Amt:     $0.00
```



EXHIBIT A

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into by and between Spectrum Brands, Inc. ("Spectrum") and Brad R. Volkmann ("Volkmann"). Spectrum and Volkmann are referred to herein individually as a "Party" and collectively as the "Parties."

### RECITALS

A.   WHEREAS, Volkmann was employed as a sales representative from approximately 2001 until March 5, 2014, first by Applica Consumer Products, Inc. ("Applica"), and then (starting in 2010) by Spectrum, when Spectrum purchased Applica;

B.   WHEREAS, Volkmann engaged in a scheme to defraud Spectrum and Applica as admitted pursuant to his plea agreement in the criminal case pending in the United States District Court for the Western District of Wisconsin captioned *United States v. Brad R. Volkmann*, case no. 15 CR 129 (the "Criminal Case");

C.   WHEREAS, a dispute exists between Spectrum and Volkmann regarding the amount owed to Spectrum by Volkmann as a result of his fraudulent conduct (the "Potential Claims"); and

D.   WHEREAS, the Parties believe it is in their best interests to settle the Potential Claims, and therefore it is their intent to buy their peace, to avoid the risk and expense of litigation, and to settle all matters, claims, issues, assertions and causes among them that have been alleged or asserted, or which could have been alleged or asserted, by and between the Parties as set forth herein (matters, claims, issues, assertions and causes which have been alleged or asserted, or which could have been alleged or asserted, are referred to collectively as the "Matters").

### AGREEMENT

IN CONSIDERATION OF the mutual promises set forth in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties stipulate and agree as follows:

1.   **Whereas Clauses Incorporated.**  The foregoing "WHEREAS" clauses are incorporated herein by reference as terms and conditions of this Agreement.

2.   **Agreed Restitution and Loss Amount.**  Volkmann agrees not to contest the entry of an order at the time of his sentencing in the Criminal Case that determines his restitution amount to be Three Hundred Seventy-Five Thousand Dollars ($375,000) (the "Restitution Amount"). Volkmann further agrees not to contest that the Restitution Amount shall be considered by the Court in the Criminal Case as the "loss amount" under Section 2B1.1(b)(1) of the United States Sentencing Guidelines for purposes of determining his sentence.


EXHIBIT B

3. **Payment of Restitution Amount.** Volkmann agrees to pay the Restitution Amount to Spectrum in full and to cooperate with the U.S. Probation Office and the Financial Litigation Unit of the U.S. Department of Justice to pay the Restitution Amount in a timely manner and in accordance with a schedule determined by the Court and the U.S. Probation Office in connection with the Criminal Case. In accordance with his plea agreement in the Criminal Case, Volkmann agrees to pay Two Hundred Fifty Thousand Dollars ($250,000) to the Clerk of Court in partial satisfaction of the Restitution Amount no later than two weeks before his sentencing date in the Criminal Case. Volkmann further agrees to pay the remainder of the Restitution Amount in full before the termination of the period of supervised release ordered by the Court in the Criminal Case. Any restitution payments that Volkmann makes to Spectrum in the Criminal Case shall count towards payment of the Restitution Amount pursuant to this Agreement. Volkmann agrees, however, that his obligation to pay the Restitution Amount in full pursuant to this Agreement exists regardless of what payments he makes pursuant to his obligations in the Criminal Case, and that Spectrum may use all available means to enforce his payment obligation under this Agreement.

4. **Release By and Among the Parties.** As material inducement for, and in consideration of, the promises identified herein, and to the fullest extent permitted by law, each Party (for itself and for its owners, shareholders, partners, members, directors, officers, employees, agents, subsidiaries, parent companies, affiliates, attorneys and insurers) releases each and every other Party (and its owners, shareholders, partners, members, directors, officers, employees, agents, subsidiaries, parent companies, affiliates, attorneys and insurers) from any and all past, present, or future claims, actions, rights, judgments, orders, demands, suits, causes of action, losses, obligations, promises, liabilities, costs or damages of any kind, nature or description whatsoever, including but not limited to tort claims, contract claims, warranty claims, statutory claims, declaratory judgment actions, counterclaims, cross-claims, or third party claims, that each Party ever had, may have had, now has, or hereafter may have, against each and every other Party, whether known or unknown, whether patent or latent, suspected or claimed, arising out of, relating to, or based in any way on the facts and circumstances of the Criminal Case, the Potential Claims, and/or the Matters (collectively, the "Released Claims").

5. **Unknown Facts.** Each Party acknowledges that it may hereafter discover facts different from, or in addition to, those that it now knows to be or believes to be true with respect to the Released Claims, and agrees that this Agreement and the releases contained herein shall be and remain effective in all respects, notwithstanding such different or additional facts and subsequent discovery thereof.

6. **No Collateral Representations.** The consideration provided herein contains the entire consideration to which the Parties will be entitled in exchange for the releases set forth herein. Each Party acknowledges that the other Parties, their agents or attorneys, or any other person or entity, has not made any promise, representation or warranty, expressed or implied, not expressly contained in this Agreement, which has induced it to sign this Agreement.

7. **Inadmissibility of Agreement.** This Agreement is a settlement document and shall not be admissible in evidence in any action or proceeding, except by court order, or in an action or proceeding to interpret, for breach of or to enforce the terms of this Agreement.

8. **Acknowledgments and Authority to Execute.** Each Party acknowledges that it has carefully read and fully understands all of the provisions of this Agreement; that it agrees to all of the provisions of this Agreement; that it is voluntarily entering into this Agreement; that it has not been threatened or placed under duress in exchange for entering into this Agreement and that it has the capacity to enter into this Agreement. Each Party acknowledges that it has discussed all aspects of this Agreement with its counsel to the full extent desired. Each Party, and the person signing on behalf of each Party, represents that the persons signing this Agreement have the authority to execute this document and thereby bind the Party hereto on whose behalf the persons are signing.

9. **Invalidity or Unenforceability of any Provision of the Agreement.** The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision.

10. **Binding on Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of each of the Parties and their respective assigns, legal representatives, and successors in interest.

11. **Governing Law.** This Agreement shall be governed by and shall be construed and interpreted in accordance with the law of the State of Wisconsin, without regard to Wisconsin choice of law principles.

12. **Counterparts.** This Agreement may be executed in counterparts and all counterparts so executed shall constitute one agreement, binding upon the Parties hereto, notwithstanding that the Parties are not signatories to the original of the same counterpart. The counterparts may be executed and served by sending a PDF copy to the other Party (or their counsel) via electronic mail, which counterparts shall be deemed originals.

13. **Amendment or Modification of Agreement.** This Agreement may not be altered, amended, modified, or otherwise changed, except by a written agreement executed by a duly authorized representative of each Party.

14. **Headings.** Section headings contained in this Agreement are for purposes of organization only and shall not constitute parts of the Agreement.

15. **Jointly Prepared.** This Agreement was jointly negotiated, prepared and drafted by the respective Parties and their counsel. Accordingly, if a court deems any language in the Agreement to be vague or ambiguous, such language shall not be presumptively construed against any Party based on the identity of the drafter.

*[REMAINDER OF THIS PAGE BLANK]*

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement and Mutual Release to be executed as of the date(s) indicated below:

SPECTRUM BRANDS, INC.

By: _____ Date: 12/7/15
James R.M. Hemmings
Division Vice President and Senior Litigation Counsel

BRAD R. VOLKMANN

By: _____ Date: 12-02-15
Brad R. Volkmann

Acknowledged and agreed:

_____ Date: 12/2/15
Jonathan A. LaVoy
Attorney for Brad R. Volkmann
SBN: 1027608

14875341.3

Page 4 of 4